PELHAM HALL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74352. Promulgated October 30, 1935.

*Robert H. Davison, Esq.,* and *Robert H. Hopkins, Esq.,* for the petitioner.

*Byron M. Coon, Esq.,* for the respondent.

## OPINION.

STERNHAGEN: The Commissioner's determination that the correct depreciation base for the petitioner is $450,000, the price bid and paid by it at the foreclosure sale, is assailed by the petitioner, which demands the use of $809,500, which it claims to have proven as the fair market value. Its only supporting argument is a reliance upon *Suncrest Lumber Co.*, 25 B. T. A. 375, which petitioner regards as upon all fours.

While the *Suncrest* case involves a similarity of principle, it is not upon the generality of purpose and plan that its decision rests,

but upon the details of method of effectuating the purpose and carrying out the plan and the detailed evidence of valuation. The new Suncrest corporation exchanged its new bonds for the bonds of the old Champion corporation, and then exchanged the old bonds of a proven and found value for the property. Thus the property was held to have a cost to the new Suncrest corporation amounting to the actual value of the old Champion bonds, and it was held that such actual value of old bonds was equal to the actual value of the property, which latter value was found as a fact. The bid alone was held to be not conclusive of actual cost. In the present case, the new corporation issued its no par common shares to the old bondholders in the ratio of one share for each $10 of bond principal and accrued interest. Thus the old bondholders must be regarded as liquidating their old bonds and realizing gain or loss in the exchange measured by the cost to them of their old bonds and the value of the shares received. Correlatively, the cost to the new corporation of the old bonds received and the value of the new shares issued are likewise measured by the value of the old bonds.

These old bonds were in default and were worth no more than what the property mortgaged to secure them would bring upon foreclosure. This property, although it had been assessed at $806,000, was in 1930 earning a net income of less than $50,000 a year, and the estimated net income for 1931 was $25,000, before depreciation and income taxes, and after interest at 6 percent on a prospective new mortgage of $400,000. Although an experienced real estate dealer gave his opinion that the property was worth $809,500, his opinion is not conclusive upon the Board, *Uncasville Manufacturing Co.* v. *Commissioner*, 55 Fed. (2d) 893,[1] and we are unable to give it full weight. It was arrived at by a formula of capitalizing earnings which was predicated upon figures at variance with the earning figures appearing on petitioner's Exhibit No. 2 and read into evidence also by petitioner's counsel. The correct figures seem to us to substantiate the bid price of $450,000 as reasonably approximating the performance and prospects of the property and representing its fair market value at the time of acquisition. The cost has therefore been found as a fact to have been $450,000.

The theory involved is that the depreciation base is actual cost to the taxpayer of the depreciable property and not the value of the property when acquired, for it is the taxpayer's investment which is being preserved by depreciation. Were the property acquired by the issuance of the taxpayer's shares, the cost would be the value of the shares issued. *Ida I. McKinney*, 32 B. T. A. 450, 456; *Pierce Oil Corporation*, 32 B. T. A. 403, 430. The property here was not

---

[1] See Law of Federal Income Taxation, Paul and Mertens, vol. 5, § 52.04, *Opinion Evidence.*

acquired for shares, but for cash and the old bonds, which bonds were property in the hands of the taxpayer corporation. Thus the cost of the depreciable property acquired is the value of the property (bonds) and cash given up for it. Although the bid itself does not conclusively establish the amount of the price actually paid, the evidence does not establish that the price was in fact more than the bid. Cf. *Newberry Lumber & Chemical Co.*, 33 B. T. A. 150.

There is no unfairness in computing the taxpayer's annual deductions for exhaustion upon a capital base of $450,000, because the whole plan was to bring the capital investment in the building and the interests of the old bondholders down to a level of value consonant with earnings. Presumably both the old corporation and the old bondholders took their proper loss deductions. The new corporation started upon a new basis and its depreciation is measurable accordingly.

*Judgment will be entered for the respondent.*