## PELHAM HALL CO. v. HASSETT, Collector of Internal Revenue.

### No. 4028.

Circuit Court of Appeals, First Circuit.

Jan. 29, 1945.

Philip J. Woodward, Robert H. Davison and Haussermann, Davison & Shattuck, all of Boston, Mass., for appellant.

John F. Costelloe, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen. (J. Louis Monarch, Sp. Asst. to the Atty. Gen., Edmund J. Brandon, U.S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

We are called upon in this case to consider to what extent a decision of the Board of Tax Appeals which has become final has the effect of res judicata in litigation involving a subsequent tax year.

In its income tax return for the fiscal year ending August 31, 1936, the taxpayer claimed for depreciation on a certain building a deduction calculated at 2% on a base of $806,000. The Commissioner, though accepting the 2% rate, reduced the base to $362,700, and accordingly assessed a deficiency of $1216.29. This additional tax, with interest in the sum of $120.15, was paid to the Collector on July 26, 1938. Thereafter the taxpayer duly filed with the Collector a claim for refund of $1,336.44, charging the Commissioner with error in allowing depreciation on a base of only $362,700, and contending "that the building was acquired by it in a tax free reorganization within the meaning of Sections 112 and 113 of the Revenue Act of 1928 and that the base for depreciation in the hands of the taxpayer is the same as the base for depreciation in the hands of the predecessor corporation, Pelham Hall, Inc., namely, $1,384,939.38." The claim was disallowed in full by the Commissioner in a letter dated February 19, 1941.

Following that, the taxpayer filed the present complaint in the court below seeking recovery of the alleged overpayment of $1,336.44 with interest from the date of payment. The complaint repeated the contention which had been made in the claim for refund, that the reorganization under which the taxpayer acquired the building was one on which no gain or loss was recognized for income tax purposes under the Revenue Act of 1928; and that the cost basis and basis for depreciation of the building in the taxpayer's hands was at least as great as $806,000, the amount on which the taxpayer had computed depreciation in its return for the year in question. In answer, the Collector pleaded that the decision in Pelham Hall Co. v. Commissioner, 1935, 33 B.T.A. 329 involving the basis for depreciation in the fiscal period ending August 31, 1931, barred the present action. The District Court so ruled, and gave judgment for the defendant. The pending appeal was taken from this judgment.

An earlier complaint for recovery of an alleged overpayment for the fiscal year ending August 31, 1932, was disposed of in the District Court by a judgment for the defendant on a plea of res judicata based on Pelham Hall Co. v. Commissioner, 1935, 33 B.T.A. 329. Pelham Hall Co. v. Carney, D.C., 1939, 27 F.Supp. 388. On appeal, this court did not pass on the res judicata point but affirmed on another ground. Pelham Hall Co. v. Carney, 1940, 1 Cir., 111 F.2d 944. This time we are obliged to decide the res judicata point.

A brief summary of the facts stipulated in the present record will indicate the scope of the issues litigated and determined in Pelham Hall Co. v. Commissioner, 33 B.T.A. 329, with respect to the tax period ending August 31, 1931:

The plaintiff, Pelham Hall Company, was incorporated as a means of refinancing the Pelham Hall building in Brookline, Massachusetts. There were outstanding and in default $1,172,000 of bonds of the predecessor corporation, called Pelham Hall, Inc., which had constructed the building. A committee of the bondholders was organized to protect their interests. Ninety-five per cent of the bonds were deposited with the committee, which was empowered to bid for the property at a foreclosure sale. At the sale, on May 6, 1931, the only bid on the property was one of $450,000 made by Philip G. Willard, acting for the committee or any corporation to be organized by the committee. Payment was permitted to be made with the old bonds and matured coupons. The plaintiff was organized on May 26, 1931. The bondholders of the predecessor corporation turned in their bonds to the plaintiff, in exchange for stock of the plaintiff at an agreed ratio. The old bonds were surrendered in payment of the bid price. The building in question, which had been deeded to Willard after the foreclosure sale, was conveyed by him to the plaintiff on May 28, 1931.

In its income tax return for the fiscal period from the date of its organization to August 31, 1931, the taxpayer claimed a deduction for depreciation calculated at a rate of 2% a year on a base of $806,000, which was the assessed value of the building. The Commissioner disallowed the deduction in part, ruling that the bid price of $450,000 must be taken as the fair market value of the building and land in the absence of clear and convincing proof to the contrary. 80.6 per cent of $450,000, or $362,700, was taken as the value of the building alone, the land itself not being a depreciable asset. The taxpayer then petitioned the Board of Tax Appeals for redetermination of the deficiency. In this petition the taxpayer set forth its theory of the case as follows: "The price bid at foreclosure sale of $450,000.00 is not con-

clusive as to the measure of cost of the property to the petitioner but that what occurred was an exchange of property (bonds of the old corporation) for property (assets of the old corporation) so that the basis for depreciation of the assets so received should be the fair market value of the assets at the time of their receipt by the petitioner." Wherefore, the taxpayer asked the Board to "allow as a basis for depreciation the fair market value of the property at the date of receipt by the petitioner in place of the price bid at the foreclosure sale."

After taking evidence as to the fair market value of the building when acquired by the plaintiff, the Board affirmed the Commissioner's determination. Recognizing that the cost of the building to the plaintiff was the value of the bonds given up in exchange for it, and that the bonds were worth only the fair market value of the building mortgaged to secure them, the Board concluded that, "Although the bid itself does not conclusively establish the amount of the price actually paid, the evidence does not establish that the price was in fact more than the bid." Pelham Hall Co. v. Commissioner, 33 B.T.A. 329, 332.

Thus it appears that the only issue then presented to the Board for decision was whether the Commissioner had properly computed the "cost" of the building to the taxpayer under section 113(a) of the Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 380; and this, in turn, depended upon a determination of the fair market value of the building at the date of its acquisition by the taxpayer. No claim was made that the refinancing transaction was a tax-free reorganization and that, under section 114(a), in conjunction with section 113(a) (7), 26 U.S.C.A. Int.Rev.Acts, pages 382, 383, the basis for the reorganized corporation was the cost of the building to the old corporation. The Board accepted the issue as tendered in the petition, and proceeded to decide it. In one brief sentence at the conclusion of its opinion, the Board stated: "The new corporation started upon a new basis and its depreciation is measurable accordingly"— thus making the same assumption which had been made by the Commissioner and the taxpayer, that the refinancing transaction was not a tax-free reorganization.

■ The taxpayer did not seek a review of the Board's decision, and it became final. Its effect as res judicata is now be-

fore us. In a half-hearted way, the taxpayer contends that an essential requirement to the operation of estoppel by judgment is that the prior adjudication shall have been made by a court of competent jurisdiction; and that the Board of Tax Appeals is not a court but merely an executive or administrative board. See Old Colony Trust Co. v. Commissioner of Internal Revenue, 1929, 279 U.S. 716, 725, 49 S.Ct. 499, 73 L.Ed. 918. Since its reconstitution by the Revenue Act of 1926, the decisions of the Board (now renamed the Tax Court of the United States) have been essentially judicial in character; and it is now well settled that its decisions are a basis of res judicata whether they have been reviewed by a court or not. Continental Petroleum Co. v. United States, 1936, 10 Cir., 87 F.2d 91, 94; certiorari denied, 1937, 300 U.S. 679, 57 S.Ct. 670, 81 L.Ed. 883; Kelly v. United States, 1937, 9 Cir., 90 F.2d 73; certiorari denied, 1937, 302 U.S. 730, 58 S.Ct. 54, 82 L.Ed. 564; Donald v. J. J. White Lumber Co., 1934, 5 Cir., 68 F.2d 441; Greenbaum v. United States, 1936, 17 F.Supp. 83, 84 Ct.Cl. 77. We recognized this in Denholm & McKay Co. v. Commissioner of Internal Revenue, 1942, 1 Cir., 132 F.2d 243, 245. And see Griswold, Res Judicata in Federal Tax Cases (1937) 46 Yale L.J. 1320, 1323–1326.

■ A classic statement of the judge-made rules of res judicata is contained in Cromwell v. County of Sac, 1876, 94 U.S. 351, 352-53, 24 L.Ed. 195:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence actually presented in the action,

but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

This formulation was cited with approval in Tait v. Western Maryland R. Co., 1933, 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405, and in Mercoid Corporation v. Mid-Continent Investment Co., 1944, 320 U.S. 661, 671, 64 S.Ct. 268.

■■ It would be possible to play with words by asserting that the issue presented to the Board was whether the Commissioner was in error in reducing the taxpayer's basis for depreciation to $362,700; that the Board's decision upheld the Commissioner's determination; and that the taxpayer cannot escape the binding effect of this decision in litigation involving the same issue for a succeeding tax year by producing a new argument or new evidence in support of the proposition previously decided against it. See Tait v. Western Maryland R. Co., 1933, 4 Cir., 62 F.2d 933, 935. The matter should be put this way only if the policy behind the doctrine of collateral estoppel by judgment is deemed to be so strong that the courts should be astute to give the doctrine the widest possible application. We believe, on the contrary, that particularly as regards questions of law in tax cases, collateral estoppel by judgment should be rather narrowly applied. To minimize the recurring hardship to the taxpayer or prejudice to the revenue (as the case may be), with respect to the taxes for all succeeding tax years, neither the taxpayer nor the government should be precluded from raising a relevant point of law unless it appears beyond doubt that the precise point was actually contested and decided (not merely assumed) in the prior litigation.

As the Supreme Court pointed out in Cromwell v. County of Sac, supra, 94 U.S. 351 at page 356: "Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defence in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction."

■ When the taxpayer filed with the Board its petition for review, the indications then were that the transaction would not be held to be a tax-free reorganization. See Suncrest Lumber Co. v. Commissioner, 1932, 25 B.T.A. 375, 389. The taxpayer might well have thought it not worth while to contest this point, and that its best chance of success was to obtain from the Board a redetermination of the cost of the building to it. Since that time, it has become clear from controlling decisions of the Supreme Court that the transaction by which the taxpayer acquired the building was a tax-free reorganization and that the taxpayer should have taken over the base of its transferor. Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775; Palm Springs Holding Corporation v. Commissioner of Internal Revenue, 1942, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785. This the government now concedes. From our recital of the proceedings before the Board, supra, we think it is abundantly clear that the Board had before it no controverted issue as to whether the transaction was a tax-free reorganization; that no such question was "actually litigated and determined" by the Board within the meaning of the rule as laid down in the Cromwell case. Indeed, the joint stipulation in the case at bar expressly recites: "It is further stipulated and agreed that the issue of whether the property in question was acquired by Pelham Hall Company through a taxfree reorganization under the pro-

visions of the Internal Revenue Act was not raised in the case before the Board of Tax Appeals." [1]

It is a curious fact that in this case the existence in our law of doctrines of res judicata, rather than serving the avowed purpose of giving "relief from redundant litigation" (Tait v. Western Maryland R. Co., 1933, 289 U.S. 620, 624, 53 S.Ct. 706, 77 L.Ed. 1405), has, upon the contrary, actually stimulated litigation which otherwise would never have arisen. If the Commissioner had not supposed that the government had a good defense of res judicata, he would have granted the taxpayer's claim for refund on its merits. In deference to recent decisions of the Supreme Court squarely in point, he would have accepted the taxpayer's contention that the transaction was a tax-free reorganization, instead of forcing the taxpayer to sue for recovery of the overpayment.

■ We rest our decision in the case at bar upon the ground that the question whether the transaction was a tax-free reorganization, as affecting the determination of the taxpayer's proper basis for depreciation, was not "actually litigated and determined" in Pelham Hall Co. v. Commissioner, 33 B.T.A. 329, and therefore that the taxpayer was free to press this issue as the foundation of a claim for refund of an alleged overpayment for the tax year now in question.

But even if such question of law had actually been litigated and determined against the taxpayer in Pelham Hall Co.

v. Commissioner, 33 B.T.A. 329, we are by no means clear that the taxpayer would have been precluded from raising the same point again in litigation involving its taxes for a subsequent year. The Supreme Court itself has recognized that collateral estoppel by judgment is not always operative even where the precise issue had been contested and determined in prior litigation. Blair v. Commissioner of Internal Revenue, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. But see Commissioner of Internal Revenue v. Western Union Telegraph Co., 1944, 2 Cir., 141 F.2d 774, 778. Cf. United States v. Stone & Downer Co., 1927, 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013. See American Law Institute Restatement of Judgments, § 70; Griswold, Res Judicata in Federal Tax Cases (1937) 46 Yale L. J. 1320, 1355–58. A supervening decision of the highest court, settling a point of law contrary to the judgment relied upon as res judicata, may perhaps be considered as having "created a new situation" (Blair v. Commissioner of Internal Revenue, supra, 300 U.S. 5 at page 9, 57 S.Ct. 332, 81 L.Ed. 465) rendering it inappropriate to apply the doctrine of collateral estoppel by judgment in litigation involving subsequent tax years.[2] For example, suppose in an action by A, a manufacturer of jigsaw puzzles, the District Court decides that jigsaw puzzles are "games" within the meaning of section 609 of the Revenue Act of 1932, 47 Stat. 264, 26 U.S.C.A. Int.Rev.Acts, page 612, imposing a 10% excise tax on the sale of sporting goods and games. No appeal is

---

[1] An analogous problem as to the scope of the issue was before us in Pelham Hall Co. v. Carney, 1940, 1 Cir., 111 F. 2d 944, which was an action by this same taxpayer for recovery of an alleged overpayment of income taxes for the fiscal year ending August 31, 1932. As above stated in the text, we did not in that case pass upon the defense of res judicata, which the District Court had held to be well taken. We affirmed the judgment for the defendant upon an application of the general rule that a taxpayer, in suing for recovery of taxes paid, is confined to the scope of the grounds for refund asserted in the claim filed with the Commissioner. The point was that the claim for refund filed by the taxpayer in that case assumed the applicability of the general rule in section 113(a) of the Revenue Act making the "cost" of the property to the taxpayer the basis for computing depreciation, and directed the Commissioner's attention to an alleged error in this cost figure as allowed by him. No facts were set forth in the claim which would suggest to the Commissioner that another subsection of the Revenue Act was applicable, that is, the exceptional provision in section 113(a) (7) which would entitle the taxpayer to take over the cost base of the predecessor corporation. We held that the taxpayer, in suing to recover the alleged overpayment, could not urge the new ground that the transaction was a tax-free reorganization to sustain its proposition that the Commissioner had erroneously denied its claim for refund.

[2] The kindred doctrine of the law of the case yields place when there has intervened between the first and second appeals a controlling opinion of the Supreme Court. White v. Higgins, 1940, 1 Cir., 116 F.2d 312, 319.

taken. Later, in litigation brought by a competing manufacturer, the Supreme Court decides that jigsaw puzzles are not "games" within the meaning of the particular section of the Revenue Act. White v. Aronson, 1937, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. 20. Is A, in all subsequent sales by him of jigsaw puzzles, to be saddled with the tax because of res judicata, whereas his competitors are free of the tax? Again, take the case of New York, ex rel. Rogers, v. Graves, 1937, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306, where at the suit of Rogers, the general counsel of the Panama Railroad Company, a wholly owned instrumentality of the United States, the Supreme Court held that the salaries of officers and employees of the company are constitutionally immune from state income taxes. This case was shortly thereafter overruled, in Graves v. New York, ex rel. O'Keefe, 1939, 306 U.S. 466, 486, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466. Is Rogers, by virtue of res judicata, exempt from a state income tax in all subsequent tax years, while his fellow officers and employees of the federally owned instrumentality are subject to such tax?

These considerations lead us to throw out the caveat that even if it had been litigated and determined in Pelham Hall Co. v. Commissioner, 33 B.T.A. 329, that the transaction was not a tax-free reorganization, it would not necessarily follow that this determination would be res judicata in litigation involving a subsequent tax year. The qualifications upon the doctrine of collateral estoppel by judgment are by no means fully defined in the cases. These questions we reserve because under the view we take it is unnecessary to decide them now.

One remaining point urged by the government may be disposed of briefly: The stipulated facts recite that the building cost the predecessor corporation $1,384,-939.38; that it was completed in 1927; and that it then had a useful life expectancy of fifty years. The suggestion is that, even if the taxpayer is entitled to use the basis of the property in the hands of its transferor, the taxpayer must be denied recovery because it failed to carry its burden of proof on this issue, "since there is nothing to show that numerous conceivable adjustments to the basis of the property were not made while it was held by the transferor. See, e.g., Sects. 111(b) (1), 112(a) of the Revenue Act of 1928 [26 U.S.C.A. Int.Rev.Acts, pages 376, 377]." But in the stipulation it is expressly agreed that the facts stated therein, "together with the facts pleaded in the complaint and admitted by the answer, are all the relevant facts pertinent to the issues raised in this case and the parties agree to submit the case on this record." This obviously excludes the existence of "conceivable adjustments" which might have been made to the basis of the property in the hands of the transferor. It was evidently intended by the stipulation to furnish the trial judge with all the necessary facts to enable him to give judgment for the plaintiff if the sole defense of res judicata were rejected. We are informed by counsel for the plaintiff that no question was raised by the government in the court below as to the sufficiency of the facts in the record for that purpose.

The judgment of the District Court is vacated and the case is remanded to that court with directions to enter judgment for the plaintiff in the sum of $1,336.44, with interest thereon from July 26, 1938; the appellant recovers costs of appeal.