THE MAYAGÜEZ LIGHT, POWER & ICE CO., INC., Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent.

No. 47. Argued April 23, 1945.—Decided May 21, 1945.

*J. Alemañy Sosa* for petitioner. *Jesús A. González, Acting Attorney General,* and *M. Velázquez Flores, Deputy Attorney General,* for intervener, defendant in the main action.

Mr. Justice Snyder delivered the opinion of the court.

On June 17, 1944 the petitioner filed a complaint in the Tax Court to review the action of the Treasurer in notifying it of a deficiency in its income tax return for 1936. On March 7, 1945 the Tax Court *sua sponte* dismissed the complaint for lack of jurisdiction because of the failure of the petitioner to file a bond for three-fourths of the amount of the tax in dispute pursuant to § 57(a) of the Income Tax Act, as amended by Act No. 23, Laws of Puerto Rico, 1941, Special Session (p. 72). We granted certiorari to review that decision.

Section 57(a), after providing for review of the resolution of the Treasurer with regard to any deficiency within thirty days after notification of the resolution, says: *"Provided,* That (1) the resolution of the Treasurer on the determination of any deficiency, and (2) the furnishing of a bond by the taxpayer, subject to the approval of the Treasurer, for a sum of not less than three-fourths (¾) of the amount of the tax appealed, shall each and both of them be indispensable requirements to be complied with before re-

sorting to said court, without which the latter shall not acquire jurisdiction.''

The petitioner contends that Act No. 169, Laws of Puerto Rico, 1943 (p. 600), which is the latest expression of the Legislature on the powers and jurisdiction of the Tax Court, has abolished this bond requirement. This theory is based on the language of § 3 of Act No. 169. The second paragraph of that Section provides that complaints must be filed within 30 days from service of notice of decision by the Treasurer in five types of cases. After a proviso for motion for reconsideration by the Treasurer, we come to the language relied on by the petitioner. It reads as follows:

''*And provided, further,* That the attachment-service and the attachment proceedings for the collection of the tax the object of the action or remedy shall be suspended, when the laws on the matter so authorize, and if the Treasurer has not already suspended them according to said laws, until the court renders its decision; provided the court, upon application of the taxpayer, and after summoning the Treasurer of Puerto Rico, authorizes, to its satisfaction, the furnishing of bond to secure the tax in controversy, including interest and penalties, such authorization to furnish said security, as well as the fixing of the amount thereof, shall be a discretional and exclusive power of the court, with due regard, in each case, to the facts and circumstances which, in its judgment, may concur and which affect the interest both of the taxpayer and of The People of Puerto Rico.''

As we pointed out in *Mayagüez Sugar Co.* v. *Court of Tax Appeals,* 60 P.R.R. 737, 740–2, the Income Tax Act—unlike the situation which prevailed when *P. R. Fertilizer Co.* v. *Treasurer,* 50 P.R.R. 389, was decided—is no longer the exclusive repository of *all* the procedure for judicial review of all questions arising thereunder. Both Act No. 172, Laws of Puerto Rico, 1941—and the present statute, Act No. 169 of 1943—contain procedural and jurisdictional requisites.

We must therefore now look to both the Income Tax Act and Act No. 169 to determine such questions.

These two acts undoubtedly overlap in their procedural requirements, resulting in considerable confusion in our tax litigation of recent years. This is a highly undesirable situation. Both parties to a judicial controversy are entitled to a decision on the merits, particularly in tax disputes. To that end procedural and jurisdictional requirements should be so plainly and clearly written that no one could reasonably mistake their import. That desirable goal has not as yet been fully attained for tax cases (See *Standard Oil Company (New Jersey)* v. *Tax Court,* 64 P.R.R. 641; *El Próspero Fruit Co.* v. *Tax Court,* 64 P.R.R. 631). A cursory reading of these two statutes discloses that the present case once again involves a procedural point as to which there is considerable room for argument on both sides. As such matters are the daily concern of the courts and within their special competence—indeed, the Legislature has seen fit to vest in us authority, which we have exercised, to promulgate Rules of Procedure for the courts—we trust it is not amiss for us to suggest that when the task of overhauling our tax structure authorized by recent legislation is undertaken, an effort be made to devise a plain, uniform and integrated procedural statute for all tax litigation. Decisions by this court can only operate as a palliative; the cure is in the hands of the Legislature.

Turning to the particular point before us, we find the problem here more difficult than that encountered in the *Standard Oil Company* case. There the question was whether Act No. 169 had eliminated the provision of § 76(a) of the Income Tax Act that payment of the tax under protest was one of the jurisdictional requirements to obtain review by this court of a decision of the Tax Court. We held that the total silence of Act No. 169 on this question was not a sufficient indication of the intention of the Legislature to repeal that requirement, and that it is therefore still in effect.

Consequently, § 76(a) must be read together with Act No. 169 by those seeking review by us of decisions of the Tax Court.

But here, the petitioner contends, Act No. 169 is not silent as to the three-fourths bond provision required by § 57(a) of the Income Tax Act for review of a resolution of the Treasurer by the Tax Court. Its argument is that the above-quoted provision of § 3 of Act No. 169 establishes another procedure to be followed by the Treasurer to assure ultimate collection of the tax which includes, if necessary, a bond to be fixed by the Tax Court in its discretion; it therefore asserts that this provision by implication supersedes the three-fourths bond provision of § 57(a) because it is in effect inconsistent therewith.

We are unable to agree with this contention. Just as in the case of the requirement of payment under protest pursuant to § 76(a) in order to obtain access to this court, Act No. 169 contains nothing revealing an intent on the part of the Legislature to dispense with the three-fourths bond requirement of § 57(a). We find it difficult to understand the exact scope of the proviso of § 3 of Act No. 169 on which the petitioner relies. But we find it unnecessary in this case to spell out its exact meaning and purpose. We need only state that such indirect language cannot be construed to repeal *by implication* the specific requirement of § 57(a) for a three-fourths bond. We believe it our duty to leave this important provision of § 57(a) in effect until the Legislature expresses its intention on the question specifically and directly. Since the quoted portion of § 3 of Act No. 169 on its face has no relation to the three-fourths bond provision of § 57(a), we hold that this requirement for review by the Tax Court of a resolution by the Treasurer on a deficiency is still in effect.[1]

---

[1] A commentator who, representing private interests, would have been unlikely to favor this result if it could logically be avoided, reaches the same conclusion. E. Córdova Díaz, Procedure to be followed to review notifications in Tax Court of Puerto Rico, *La Toga*, October 31, 1944, p. 6.

■ However, there is an additional factor present here. Shortly after Act No. 169 of 1943 went into effect, the Tax Court decided in two opinions, dated October 27, 1943 and November 16, 1943, that the filing of the aforesaid three-fourths bond was no longer required. Those cases never reached this court. Thereafter, relying on those decisions, the petitioner filed its complaint in the Tax Court on June 17, 1944 without a bond. But on February 27, 1945, the Tax Court, after a change in its membership, reversed itself in another case, holding that a bond was required. Following this new ruling, it dismissed the instant case and other cases for lack of jurisdiction.

It seems to us that under these peculiar circumstances it would be manifestly unjust to hold that taxpayers who in good faith relied on the position of the Tax Court, which was never challenged here by the Treasurer and which the Tax Court changed *sua sponte,* are at this late date foreclosed from a hearing on the merits. We cannot subscribe to such a sporting theory of justice, under which the rulings of a court might be used to trap the unwary, or even the wary.

Fortunately, there is a legal theory at hand which we think can be applied to this case; namely, the rule that those who have obtained property or contract rights in reliance on a decision of a court of last resort may under certain circumstances be protected in those rights, despite the subsequent reversal of the decision in question. *A. Cuesta & Co.* v. *Treasurer,* 54 P.R.R. 82; *F. Olazábal & Cía.* v. *District Court,* 63 P.R.R. 891.

We recognize that this rule is generally invoked only when the decision relied on is from a court of last resort. For example, one is not entitled to rely on a Federal district court decision. *Calaf* v. *González,* 127 F.(2d) 934, 938 (C.C.A. 1, 1942). In the same way, decision by one of our insular district courts could not have this effect. But here

we have an island-wide tribunal [2] which specializes in tax litigation, over which it has exclusive jurisdiction. The Tax Court, under that system, announced a rule of procedure and jurisdiction on a doubtful question which it followed for sixteen months, inducing taxpayers to rely thereon. Indeed, if a taxpayer had tendered a bond during that period it would undoubtedly have been rejected. While the case is not in point, the same elements of fair play which motivated us recently in refusing to permit the Treasurer to impose penalties for failure to pay taxes years after his predecessors had ruled administratively that no such taxes were due (*Puerto Rico Ilustrado, Inc.* v. *Buscaglia, Treas.*, 64 P.R.R. 870) dictate a similar result here.

Now that the Tax Court has changed its rule, and we have agreed with the latest version, the principle laid down in the *Cuesta* and *Olazábal* cases will be best served here by permitting those taxpayers who relied on the earlier ruling of the Tax Court to file a three-fourths bond at this time. The Treasurer thereby suffers no injury in these cases, and prospective litigants are forewarned that such bonds must hereafter be posted within the time required by law. And we see no purpose in discussing the question of whether the filing of such bonds *nunc pro tunc* is permitted by law. Here the bonds will bear the date of their filing. That is being permitted under the *Cuesta* and *Olazábal* doctrine, not as *nunc pro tunc* action.

We emphasize that we are by no means holding that the

---

[2] We see no merit in the contention that the doctrine of the *Cuesta* case does not apply herein because the Tax Court is not a "court". Judge Magruder, in an opinion for the First Circuit Court of Appeals, has pointed out in *Pelham Hall Co.* v. *Hassett*, 147 F.(2d) 63, 66, that "Since its reconstitution by the Revenue Act of 1926, the decisions of the Board (now renamed the Tax Court of the United States) have been essentially judicial in character *and it is now well settled that its decisions are a basis of res judicata whethe'' they have been reviewed by a court or not.* (Citing cases)." (Italics ours). Section 3 of Act No. 169 provides that our Tax Court "shall operate with a quasi-judicial character". For the purposes of the instant case, it is certainly a "court".

doctrine of the *Olazábal* case applies to rulings of the Tax Court on questions of substantive law, with or without appeals therefrom. Nor do we hold that in the ordinary case the failure to file timely the three-fourths bond is not fatal. Our holding is confined to the facts of this case.

The decision of the Tax Court will be reversed, and the case remanded for further proceedings not inconsistent with this opinion.