REXFORD G. TUGWELL, GOVERNOR OF PUERTO RICO, Complainant and Appellant, *v.* MANUEL A. BARRETO, MAYOR, Respondent and Appellee.

No. 14.   Argued December 4, 1945.—Decided December 13, 1945.

*E. Campos del Toro, Attorney General, Guillermo Gil Rivera,* and *Luis F. Camacho, Deputies Attorney General,* for appellant. *José Rafael Gelpí* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

Pursuant to § 29 of the Municipal Law,[1] the Governor submitted to the Municipal Assembly of Mayagüez five charges against Manuel A. Barreto, Mayor of Mayagüez, and asked for his removal. The Assembly dismissed the proceeding on the ground that the charges were *res judicata,* and the Governor appealed.

The Mayor has moved to dismiss the appeal on several grounds. He contends first that the notice of appeal should

---

[1] Act No. 53, Laws of P.R., 1928, as amended by Section 9 of Act No. 98, Laws of P. R., 1931.

have been addressed to the Mayor and the Assembly rather than to this court. We have refused to interpret the relevant statute in such a narrow fashion even in cases involving appeals from the district courts. See *Roig Commercial Bank* v. *Sucn. of Lugo*, 34 P.R.R. 148. Here the procedure should be as liberal as possible. The case is governed by § 29 of the Municipal Law, which simply provides for a notice of appeal.[2] There is nothing in it which requires that as a matter of form the notice shall be addressed to anyone. The salutation herein—To the Hon. Supreme Court of Puerto Rico—is therefore surplusage; and the form of the notice, otherwise in regular form, is sufficient.

The Mayor also alleges that the Municipal Assembly as a body or entity was not properly notified of the appeal. The notices were sent by mail to all the members of the Assembly; but the important thing is that one of them was addressed to Eduardo A. Ruiz, President, one to Marcel Courtier, Vice-President, and one to Dr. J. E. Arrarás, Acting Municipal Secretary. In addition, a notice was sent in the same way to the attorney for the Mayor. These steps constituted compliance with § 29. The case of *Ramírez* v. *Beverley*, 44 P.R.R. 317, relied on by the Mayor, holding that a Municipal Assembly must act as a body, and not through the individual acts of its members, is obviously not in point. Here the Governor took the precaution of notifying all the individual members of the Assembly of the appeal. But that

[2] Section 29 reads in part as follows:

"Against the resolution adopted by the municipal assembly removing the mayor, or refusing to remove him, as the case may be, the mayor, or the Governor of Porto Rico, in the proper case, may appeal to the Supreme Court of Porto Rico within a term of ten days after notifying the prejudiced party of the resolution appealed from. The mayor may likewise and in the same manner appeal to the Supreme Court in case it has been the Governor of Porto Rico who removed him.

"The appeal shall be prosecuted upon a bill filed with the Supreme Court, notice of which shall be served on the municipal assembly or the Governor of Porto Rico, as the case may be. Said bill shall be accompanied by a statement of the facts and of the law on which it is based . . ."

does not nullify the fact that he also notified Ruiz, Courtier, and Arrarás, as President, Vice-President, and Secretary, respectively. By so doing he clearly notified the Assembly as an entity.

We turn to the next ground of appeal. Section 322, Code of Civil Procedure, provides that "In case of service by mail, the notice or other paper must be deposited in the post-office, addressed to the person on whom it is to be served at his office or place of residence, *and the postage paid.* The service is complete at the time of the deposit. . ." (Italics ours.) See also Rule 3(*b*), Rules of Civil Procedure. Here the appellant served the Assembly by registered mail. But the Mayor contends that the service was defective under § 322 in view of the fact that the President of the Assembly and others were required by the post office to pay 7¢ apiece as postage due before they could obtain delivery of the letters containing their notices.

There must be strict compliance with a statutory provision for substituted service by mail, especially where as here the service is considered as completed by deposit in the mails. *Gascón* v. *Alvarez,* 28 P.R.R. 336; *Roig Commercial Bank* v. *Sucn. of Lugo,* 34 P.R.R. 148; *Fontánez* v. *Heirs of Buxó,* 34 P.R.R. 680; see *Water Resources Authority* v. *District Court, ante,* p. 451.[3] But here the appellant sent the notices by registered mail although the statute contains no such requirement. And he affixed 50¢ in stamps to each envelope after he was advised by the postal clerk who weighed the letters that this was the correct amount of postage. The Postmaster of San Juan in an affidavit filed herein places the blame for the 7¢ deficiency on the said postal clerk. We do not stop to inquire what would be the result if the addressees had refused to pay the 7¢ deficiency or to accept delivery. Nor are we

_____

[3] Service by mail is complete on the day of deposit, even though the letter is actually received after expiration of the statutory period for making the service. *Ex parte Bithorn,* 53 P.R.R. 556, and cases cited therein; *Carrión* v. *Lawton,* 43 P.R.R. 50, 296. See *Próspero Fruit Co.* v. *Tax Court,* 64 P.R.R. 631.

faced with a situation where the addressees were called on to pay a large proportion of the postage. Here registered mail, not required by law, was used; 50¢ out of 57¢ was paid; the appellant was assured by a postal clerk that 50¢ was the amount of postage required; and the postal officials, who frequently return to the sender letters which have only a small portion of the necessary stamps thereon, were apparently of the view that payment had been substantially made, as they actually delivered the letters to the recipients who signed receipts therefor. Under all those circumstances, we cannot hold that the appellant did not mail the notices with the postage paid.

The appellant also contends that, in any event, the notice of appeal required by § 29 may never be served by mail. Although we have not hitherto passed on this point, analogous cases satisfy us that mailing the notice is sufficient under the terms of § 29. Cf. *Vando* v. *Municipal Court*, *ante*, p. 6; *People* v. *Rubio*, 44 P.R.R. 866; *People* v. *Mercado*, 45 P.R.R. 727.

Another ground of the motion to dismiss is that, although the appellee was served with a notice of appeal within ten days of the resolution of the Assembly, he was not served within that time with a statement of the facts and of the law on which the appeal was based, as required by § 29. The appellee correctly points out that this document is substantially equivalent to an assignment of errors. Viewed in that light, there was no reason why the Legislature should have made it a jurisdictional requirement that the assignment of errors, as well as the notice of appeal, must be served within the time allowed to take an appeal. There is no such requirement in this jurisdiction for appeals in ordinary civil cases. In such cases jurisdiction is vested in this court by the filing, without anything more, of a notice of appeal. Section 296, Code of Civil Procedure; *Campos* v. *Central Cambalache*, 64 P.R.R. 57; *Guilhon & Barthelemy* v. *District*

*Court,* 61 P.R.R. 289.[4]   The assignment of errors appears for the first time in the brief of the appellant in this court.   Rule 42 of this court.   A reasonable interpretation of § 29 therefore is that the appellee must be notified with a copy of the said assignment of errors a reasonable time prior to the hearing on appeal in order that he may prepare therefor. As the Mayor and the Assembly were notified with copies thereof on November 26 and the hearing was held on December 4, the motion to dismiss on this ground was not well taken.

The next ground for dismissal needs little discussion. The appellee asserts that the decision of the Assembly granting the motion raising the special defense of *res judicata* is not a resolution refusing to remove the Mayor and is therefore not appealable under § 29.   His argument is that this was a ruling in the nature of an order of a district court sustaining a demurrer; that appeal could come only from a subsequent "judgment" entered on the order; and that since the appellant never requested the entry of such a "judgment," there is no final judgment from which to appeal.   It is sufficient to state that a similar contention was made and rejected in *Ballester* v. *Court of Tax Appeals,* 60 P.R.R. 749, 760–61; cf. *Winship, Governor,* v. *Municipal Assembly,* 53 P.R.R. 131.

Section 29 provides for appeal only by the Governor or the Mayor; in a case arising out of charges preferred by a member of the Assembly or by a citizen, a decision refusing to remove the Mayor is not appealable.   The appellee therefore argues that the appeal herein does not lie because these

---

[4] This is in accordance with the modern tendency.   Under Rule 73(a) of the Federal Rules of Civil Procedure the notice gives jurisdiction to the appellate court; thereafter, failure to take any of the further steps required on appeal does not affect the validity of the appeal, although it may furnish grounds for dismissal of the appeal.   Even under the old Federal practice, it is extremely doubtful if the appellee is correct in his assertion that filing an assignment of errors within the time allowed to appeal was a jurisdictional requirement.   3 Moore's Federal Practice, § 73.01, pp. 3389–90.   In any event, whatever the old Federal Rule may have been, it is no longer a jurisdictional requirement in Federal cases.   And it never has been the rule in this jurisdiction.

charges were brought by a private citizen named R. G. Tugwell and not by the Governor. He asserts that for the charges to be brought by the Governor they must be introduced by the clause, "I, R. G. Tugwell, Governor of Puerto Rico, make the following charges." But these charges were formally signed by R. G. Tugwell, Governor. That was sufficient to make them the official act of the Governor.

The appellee also alleges that § 29, in so far it grants any right of appeal, is unconstitutional and void because it discriminates against individual Assemblymen and private citizens who, unlike the Governor, cannot appeal from an adverse decision on charges brought by them. The shortest answer to this contention is that "the constitutionality of a statute can not be challenged unless the person who attacks it shows that the said statute deprives him of rights protected by the Constitution." *College of Pharmacists* v. *Board of Pharmacy*, 60 P.R.R. 789, 794; *Government of the Capital* v. *Executive Council*, 63 P.R.R. 417, 445. Here the Mayor is not appealing; he therefore cannot be heard to complain about alleged constitutional defects in the statute governing such appeals.

Coming to the merits of the appeal, the appellant contends first that the Assembly erred in overruling the motion to disqualify three Assemblymen, and in preventing the appellant from adducing testimony in support thereof. The motion alleged that Assemblymen Fernando del Toro and Félix Castillo were disqualified from sitting in this impeachment proceeding because they were "interested directly or indirectly in contracts entered into with the municipality" in violation of § 10 of the Municipal Law, which warranted their removal from office by *quo warranto* proceedings under the rule laid down in *People ex rel. Pérez* v. *Manescau*, 33 P.R.R. 703; that Pedro Barbosa does not know how to read and write, in violation of § 18 of the Municipal Law, which makes such knowledge one of the qualifications for membership in the Assembly; that *quo warranto* proceedings setting forth

these grounds have been filed against these men in the District Court of Mayagüez; and that proof of these charges is in the hands of the Governor.

The Assembly permitted the Governor to introduce as evidence in support of the motion for disqualification the complaints filed in the *quo warranto* proceedings, but refused to hear evidence to establish the facts alleged in the *quo warranto* cases. We find no error in this action of the Assembly. This impeachment proceeding is not the place to try the *quo warranto* cases. That must be done in the district court, and not by collateral attack here. If the plaintiff prevails in the district court, the three men involved will cease to be members of the Assembly. But until they are removed by a final judgment in an appropriate proceeding, they have all the duties and prerogatives of Assemblymen, including sitting in impeachment proceedings, unless the charges in the *quo warranto* cases are related to the charges in the impeachment proceeding or unless they are otherwise disqualified to sit. The Assembly did not err in refusing to hear testimony on the charges involved in *quo warranto* proceedings which had no connection with the charges herein.

The evidence to prove the allegations in the *quo warranto* proceedings having been properly excluded, the only evidence before the Assembly on the motion for disqualification was the fact that the three *quo warranto* cases had been filed. But the mere pendency of *quo warranto* proceedings, which the appellant neither alleged nor proved had any relation to the charges herein, could not operate to disqualify the Assemblymen herein. Otherwise anyone interested in preventing performance of his duties by an Assemblyman in such cases could accomplish his purpose merely by causing the institution of a *quo warranto* proceeding against him involving a wholly unrelated matter.

The appellant also contends that the Assembly erred in overruling the motion for disqualification on the ground that the Assembly prevented him from offering proof of prej-

udice on the part of these three Assemblymen. Although the same considerations do not always prevail in considering disqualification for prejudice in this type of case as compared with disqualification of judges, the appellant was entitled for purposes of disqualification both to allege and to prove prejudice. *Municipal Assembly* v. *González, Mayor,* 55 P.R.R. 526; *Mangual* v. *District Court,* 60 P.R.R. 802; see *Insular Board of Elections* v. *District Court,* 63 P.R.R. 786. But the difficulty is that counsel for the Governor did not make this contention at the impeachment hearing: the record is barren of any suggestion, whether by way of allegation, proof or offer of proof, involving prejudice. On the contrary, the motion for disqualification and the proof offered in support of it were confined to a description of the *quo warranto* proceedings. We cannot examine the question of prejudice when the Governor never raised it, or offered to prove it, before the Assembly. The Assembly did not err in overruling the motion for disqualification.

We finally reach the only substantial question in the case—the alleged error of the Assembly in holding that the charges brought by the Governor were *res judicata.* The charges are in substance that the Mayor had misappropriated certain municipal funds. On October 4, 1945, a week before the charges of the Governor were filed, a private citizen, one R. Arcelay, brought substantially similar charges involving the same funds against the Mayor pursuant to § 29; a hearing thereon was held on October 8–9, despite the fact that § 29 requires that the Mayor be notified with a copy of the charges five days in advance of the date of the hearing; and the Assembly refused to remove the Mayor. Section 29 gives the complaining citizen no right of appeal to this court under those circumstances, and Arcelay made no attempt to appeal or otherwise to obtain review of the decision. Based on these facts, the Assembly, by a seven-to-six vote, dismissed the charges herein as *res judicata.*

The question of whether and to what extent *res judicata* is applicable to the orders of administrative agencies has aroused considerable discussion. Different agencies with varying functions require different treatment; in the final analysis, the answer depends upon the character of the tribunal, the nature of the case and, above all, the specific terms of the statute involved.[5] But the instant case can be decided without extended consideration of these problems.

It may be conceded that when a Municipal Assembly is exercising its legislative functions it is free to correct its own prior determinations; this is true of administrative agencies when they exercise quasi-legislative functions like the setting of rates. (See *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210; *State Comm'n* v. *Wichita Gas Co.,* 290 U. S. 561; *Atlantic Coast Line* v. *Florida,* 295 U. S. 301; *Arizona Grocery* v. *Atchison Ry.,* 284 U. S. 370; *Tagg Bros.* v. *U. S.,* 280 U. S. 420; *Oklahoma Packing Co.* v. *Gas Co.,* 309 U. S. 4.) But we have held that a Municipal Assembly exercises quasi-judicial powers when it sits in an impeachment proceeding against a Mayor. *Municipal Assembly* v. *González, Mayor,* 55 P.R.R. 526, 544.

Such a proceeding is adversary in nature; it is properly classified as quasi-judicial; and the public interest in forestalling the relitigation under those circumstances of the same issues between the same parties is served by applying the principle of *res judicata* (see *Mayagüez Lt., P. & I. Co.* v. *Tax Court, ante,* pp. 28, 34, footnote 2; *Southern Pac. Co.* v. *Van Hoosear,* 72 F.(2d) 903 (C.C.A. 9th, 1934); *Farm Investment Co.* v. *Carpenter,* 61 Pac. 258 (Wyo. 1900); *Cardinal Bus Lines* v. *Consolidated Coach Corp.,* 72 S. W. (2d) 7 (Ky. 1934); *Pelham Hall Co.* v. *Hasset,* 147 F.(2d) 63 (C.C.A. 1st, 1945); *Beley* v. *Naphtaly,* 169 U. S. 353; 150 A.L.R. 1198; 140 A.L.R. 801; 122 A.L.R. 550; 1 Freeman on Judg-

---

[5] Parker, Administrative Res Judicata, XL Ill. L. Rev. 56; Res Judicata in Administrative Law, 49 Yale L. J. 1250; Gregory, Administrative Law: Administrative Decisions as Res Judicata, 29 Calif. L. Rev. 741.

ments, 5th ed., § 393, p. 855. But cf. *Mulcahy* v. *Public Service Commission*, 117 P.(2d) 298 (Utah 1941); *Dal Maso* v. *Board of County Commissioners*, 34 A.(2d) 464 (Md. 1943) ). Consequently, if the Governor had brought both the first and second set of charges, the point could be made that the Governor should not be permitted to harass a mayor with charges which the Governor had previously brought and of which the Mayor has been exonerated.

But when we examine the facts herein, we find that the Governor did not bring the first set of charges. A citizen, without the facilities for investigation of the Governor, filed charges which, after a hearing earlier than provided by statute, were dismissed by a decision from which no appeal is allowed. If the Legislature intended that under those circumstances the Governor should be precluded from bringing charges based on the same facts two days later, then the Legislature has established a farcical proceeding which makes a mockery of justice. We are unwilling to impute such an intention to the Legislature. Nor is it required by § 1204 of the Civil Code or the authorities cited herein.

Putting to one side the contention of the appellee as to privity and the identity of parties,[6] the inapplicability of *res judicata* here flows from the fact that the charge of the citizen and of the Governor are in legal effect different causes of action. Unlike the situation in criminal cases or in other cases, where the proceeding is not affected in substance by the identity of the complainant, here the complaining citizen controls his case without intervention of the Governor or any other

---

[6] The appellee relies on Rule 23(*a*) (3), Rules of Civil Procedure, and on cases such as those found in the Annotation in 64 A.L.R. 1262, in arguing that the decision in a case which a citizen files in the public interest is binding on all other citizens, including the Governor in his official capacity. In view of our conclusion that identity of causes of action is lacking when the Governor files charges similar to those previously brought by a citizen, we find it unnecessary to examine this theory of the appellee with reference to identity of parties. Likewise, we need not determine, since it is not involved here, whether a citizen is barred from bringing the same charge which has already been disposed of on complaint of another citizen.

government official. And, what is most important, in the event of a decision refusing removal the citizen has no right of appeal. The net result therefore is that the Legislature has set up two different types of quasi-judicial actions. In the first, the citizen must be content with the clean bill of health given the Mayor by the Assembly. But in the second the Legislature provided for a different procedure when the charge was so serious and substantial that the Governor saw fit to bring charges. The right of appeal to this court by the Governor in the event of a decision refusing removal is the key to this situation. In providing that the Governor, but not the citizen, may appeal the Legislature recognized that the Governor's charges are on a different plane and must be handled differently; *i. e.*, that a different cause of action is involved. Consequently, the Municipal Assembly erred in granting the motion raising the special defense of *res judicata*. See *Laloma* v. *Fernández*, 61 P.R.R. 550; Restatement, Judgments, §§ 45–48, 61–63; *Avellanet* v. *Porto Rican Express Company*, 64 P.R.R. 660, 669, footnote 11.

The decision of the Municipal Assembly will be reversed and the case remanded with instructions to conduct a hearing on the charges brought by the Governor.